Filed 11/14/24  P. v. Gwin CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| THE PEOPLE, | B328696 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA101332) |
| v. | |
| GEVONTE DESHAWN GWIN, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

John A. Colucci, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

Gevonte Gwin appeals from the denial of his petition for resentencing under Penal Code section 1172.6[1] for failure to make a prima facie showing.  Gwin contends the superior court erred by considering the preliminary hearing transcript and direct appellate opinion in his case, relying on a finding that Gwin personally used a firearm, and concluding the jury instructions did not allow for malice to be imputed to him.  We affirm.

## BACKGROUND

Gwin was tried for three incidents that occurred in 2007.  One incident involved the negligent discharge of a weapon, another involved a fatal shooting outside a gas station in Bellflower, and the third involved a non-fatal shooting at a Gardena strip club.  (See *People v. Gwin* (Aug. 15, 2012, B230533) [nonpub. opn.].)  In 2010, a jury found Gwin guilty of first degree murder (§ 187, subd. (a)); willful, premeditated, and deliberate attempted murder (§§ 187, subd. (a), 664, subd. (a)); and discharge of a firearm with gross negligence (§ 246.3, subd. (a)).  The jury also found that Gwin personally and intentionally discharged a firearm, causing great bodily injury or death to the victims of both the murder and attempted murder (§ 12022.53, subd. (d)).  Both convictions were also enhanced based upon a finding that Gwin committed the murder and attempted murder for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)).  The trial court sentenced Gwin to a total term of 92 years to life.  A different panel of this court affirmed the convictions on appeal. (See *People v. Gwin, supra.*)

_____

[1]     All statutory references are to the Penal Code unless otherwise specified.

2

In 2022, Gwin filed this petition for resentencing under section 1172.6 and the superior court appointed counsel. The People opposed, arguing Gwin was ineligible for relief because he was neither prosecuted under nor was his jury instructed on the felony murder or natural and probable consequences doctrines. The People attached the opinion in *People v. Gwin, supra*, and reporter's transcripts from Gwin's preliminary hearings to their opposition. They later filed the jury instructions and verdict forms from Gwin's trial. In reply, Gwin argued he made a prima facie showing of eligibility for relief because the jury instructions, specifically CALCRIM Nos. 400, 401, 520, and 521, "created sufficient confusion that it can not precisely be determined whether the theory relied upon by the jury would be allowed today," and the firearm finding did not prove he had the intent to kill.

At a prima facie hearing, the superior court stated that it had considered Gwin's petition, the People's opposition and supplemental filings, and Gwin's reply. It did not specifically mention the prior appellate opinion or preliminary hearing transcripts. After the parties submitted on the papers, the court made the following oral ruling: "The court has read and considered all of that, and the court is well aware that we're at the prima facie phase and what I can and cannot do. I am not doing any fact-finding. I'm not doing any credibility call. I'm just merely looking at the state of the record, and, in this case, part of the record is the verdict forms, certainly. And the jury came back that the defendant was guilty of first degree murder, plus that he personally used a firearm; and that he was guilty of willful, premeditated, deliberate attempted murder, and he personally used a firearm. The court also took a look at the jury

3

instructions, and I noted that no felony murder instruction was given, no natural and probable consequence instruction was given, nor was there any instruction where malice could be imputed to the defendant.  As such, the court is going to rule the defendant is legally ineligible for relief pursuant to 1172.6, and I will deny the petition."

Gwin timely appealed.

## DISCUSSION

## I.    Governing Principles

Effective January 1, 2019, the Legislature "'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*), quoting Stats. 2018, ch. 1015, § 1(f).)  One new provision, section 189, subdivision (e), narrowed the application of the felony murder rule.  (*Ibid*.)  Another, section 188, subdivision (a)(3), effectively eliminated aiding and abetting liability for murder under the natural and probable consequences doctrine by providing, "to be convicted of murder, a principal shall act with malice aforethought," and prohibiting the imputation of malice "to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), *Curiel*, *supra*, 15 Cal.5th at p. 449.) The Legislature later expanded the law to eliminate liability for attempted murder under the natural and probable consequences doctrine as well.  (See § 1172.6, subd. (a); *People v. Hurtado* (2023) 89 Cal.App.5th 887, 891.) Under this framework, a person is guilty of murder only if he or she was "the actual killer, acted

4

with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2.'" (*People v. Strong* (2022) 13 Cal.5th 698, 710 (*Strong*).)

A person convicted of murder or attempted murder under a now-invalid theory may petition the superior court under section 1172.6 to vacate the conviction and be resentenced on any remaining counts. (§ 1172.6, subd. (a).) A properly pleaded petition requires the court to appoint counsel when requested under Section 1172.6, subdivision (c). (*People v. Lewis* (2021) 11 Cal.5th 952, 963, 966 (*Lewis*).) The court must allow further briefing by the parties and "hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) In determining whether the petitioner has made a prima facie case for relief under section 1172.6, the court may consider the record of conviction. The bar for such a showing is "'very low,'" and it is passed if the petitioner's allegations, taken as true, would entitle him or her to relief. (*Lewis, supra*, 11 Cal.5th at pp. 971-972.) Although the court should not engage in factfinding at the prima facie stage, "'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Id.* at p. 971.)

If the petition states a prima facie claim for relief, the superior court must issue an order to show cause and hold an evidentiary hearing. At the evidentiary hearing, the People bear the burden of proving, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under current law. (§ 1172.6, subds. (d)(1), (d)(3).) If the People fail to meet

their burden, the trial court must grant the petition, vacate the conviction, and resentence the petitioner on any remaining charges.  (§ 1172.6, subd. (d)(3).)

We review de novo whether the superior court properly denied a section 1172.6 petition at the prima facie stage.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 545; *People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

**II.    Analysis**

In its ruling, the superior court expressly referenced only the jury instructions and verdict forms, both of which indisputably are part of the record of conviction upon which it could rely at the prima facie stage.  (*People v. Morris* (2024) 100 Cal.App.5th 1016, 1023.)  Gwin contends the court erred because it also considered the preliminary hearing transcript and appellate opinion.  He also contends the court improperly relied on the finding that he personally used a firearm, which alone "does not show that a defendant acted with malice aforethought." (*People v. Offley* (2020) 48 Cal.App.5th 588, 598 (*Offley*).)  As we explain, Gwin has not carried his burden of demonstrating error. (See *People v. Clements* (2022) 75 Cal.App.5th 276, 292-293.)

Gwin acknowledges that it was permissible for the superior court to consider "the procedural history of the case recited in any prior appellate opinion" in reaching its prima facie determination.  (§ 1172.6, subd. (d)(3).)  But he does not show that the superior court went beyond this limitation. He also points out that hearsay evidence admitted at a preliminary hearing pursuant to section 872, subdivision (b) is inadmissible at a section 1172.6 evidentiary hearing unless another hearsay exception applies (§ 1172.6, subd. (d)(3)), and that the extent to which a trial court may rely upon preliminary hearing transcripts

6

at the prima facie stage is an open question currently pending before the Supreme Court.  (See *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670 ["Did the trial court engage in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny defendant's Penal Code section 1172.6 petition at the prima facie stage?"].) But, again, Gwin does not identify any portion of the preliminary hearing transcript on which the court relied. Nor does he show that the court relied exclusively on the firearm finding, or how his case is analogous to *Offley*, where (1) the jury was instructed on the natural and probable consequences doctrine and (2) the defendant was convicted of second degree murder.[2]  (See *Offley*, *supra*, 48 Cal.App.5th at p. 593.)

But even if we were to assume that Gwin's assertions of error have merit, which they do not, he has not demonstrated a reasonable probability that, absent such errors, an order to show cause would have issued at the prima facie stage.  (*People v. Flores* (2022) 76 Cal.App.5th 974, 986.)  Error is harmless in the context of section 1172.6 if the record of conviction, which includes the jury instructions and verdict, refutes the petitioner's prima facie showing and establishes as a matter of law that he or she is not entitled to relief.  (See *Lewis*, *supra*, at pp. 971-974; *People v. Harden* (2022) 81 Cal.App.5th 45, 47-48; *People v. Daniel* (2020) 57 Cal.App.5th 666, 676 ["'jury instructions given at a petitioner's trial may provide "readily ascertainable facts from the record" that refute the petitioner's showing,' permitting

---

[2]     Gwin explains in his reply brief that he raises this argument only "to forestall the argument that should the imputation of malice argument succeed, that the firearm enhancement standing alone would support the ruling."

a trial court to determine that a petitioner is not entitled to relief"].) We agree with the Attorney General that the jury instructions and verdicts in this case establish that Gwin is not entitled to relief as a matter of law.

Gwin does not raise any challenge to his conviction for attempted murder, and he acknowledges that the jury found him guilty of first degree murder after being instructed that such a verdict required an intent to kill (CALCRIM No. 521). He asserts that the first degree murder verdict is not dispositive, however, because "that finding could have been based upon firing from a motor vehicle." Not so. The jury was instructed with a modified version of CALCRIM No. 521 setting forth two theories under which Gwin could be guilty of first degree murder. First, the jury could find that Gwin was "guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill." Second, the jury could find that Gwin was "guilty of first degree murder if the People have proved that the defendant murdered by shooting a firearm from a motor vehicle. The defendant committed this kind of murder if: 1. He shot a firearm from a motor vehicle; 2. He intentionally shot at a person who was outside the vehicle; AND 3. He intended to kill that person." Thus, to find Gwin guilty of first degree murder under either theory, the jury had to find that he intended to kill the victim. That requirement precludes his eligibility for relief under section 1172.6 as a matter of law. (*Strong, supra,* 13 Cal.5th 698, 710 ["relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life'"].)

Gwin disputes this conclusion, citing *People v. Curiel* [(2023)] 15 Cal.5th 433 for the proposition that intent to kill does not alone conclusively establish ineligibility for section 1172.6 relief.  In *Curiel*, the Supreme Court clarified that a section 1172.6 petition may be denied at the prima facie stage only where "the record conclusively establishes every element of the offense," and the intent to kill "is only one element" that "does not by itself establish any valid theory of liability." (*Curiel*, *supra*, 15 Cal.5th at p. 463.)  For instance, to establish liability under an aiding and abetting theory, the People must prove "'(a) the direct perpetrator's actus reus — a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea' — which here includes knowledge that the direct perpetrator intends to commit the crime or life-endangering act, 'and (c) the aider and abettor's actus reus — conduct by the aider and abettor that in fact assists the achievement of the crime.'" (*Id.* at p. 467.)

Gwin contends "the actus reus element is missing here." But his contention ignores the jury's finding that Gwin personally used a firearm and caused bodily injury or death to the victim. (See *Curiel*, *supra*, 15 Cal.4th at p. 463 ["additional jury findings[ ] might be relevant to the remaining elements of the relevant homicide offense and conclusively refute a petitioner's allegation that he or she could not be convicted of murder under current law"].)  It also ignores the fact that Gwin's jury was not instructed on the natural and probable consequences doctrine. The only crime at issue here was murder. Where the only unlawful purpose charged is an unlawful killing, "one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1123.)  This distinguishes Gwin's case from *Curiel*,

9

where the jury was instructed on the now-impermissible natural and probable consequences theory. The scenario discussed in *Curiel*, "where a defendant is liable for murder under the natural and probable consequences doctrine, and acts with malice aforethought, but is *not* liable as a direct aider and abettor," is "'quite narrow' and relevant only to a 'very small set of cases.'" (*Id.* at p. 470.) This case is not one of them.

Gwin recognizes that there was no natural and probable consequences instruction given in his case. Instead, he contends that the jury instructions on aiding and abetting (CALCRIM No. 401) and second degree murder (CALCRIM No. 520) created an ambiguity that could have allowed the jury to find him guilty of murder by imputing the shooter's malice to him, rather than by finding he personally harbored the requisite intent. He supports this argument by primarily relying upon *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*) and *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi.*) Both cases are distinguishable.

In *Powell*, on direct appeal, the court determined that the standard aiding and abetting instruction, CALCRIM No. 401, is "not tailored for" aiding and abetting an implied malice murder. (*Powell*, *supra*, 63 Cal.App.5th at p. 714.) Specifically, the instruction "couches direct aiding and abetting liability in terms of the aider and abettor knowing the perpetrator intended to commit the crime, the aider and abettor intending to aid and abet the perpetrator in committing the crime, and that, by words or conduct, the aider and abettor in fact aided the perpetrator's commission of the crime." (*Ibid.*) But in the context of implied malice murder, the relevant inquiry is whether the aider and abettor "intend[s] the commission of the perpetrator's act [that proximately causes death], the natural and probable

10

consequences of which are dangerous to human life, intentionally aid[s] in the commission of that act and do[es] so with conscious disregard for human life." (*Ibid.*) The court therefore concluded that giving CALCRIM No. 401 in the circumstances was error, although it ultimately concluded the error was harmless. (*Ibid.*)

In *Langi*, the same issue arose in the context of a section 1172.6 resentencing petition. The defendant was part of a group who beat and robbed the victim. (*Langi, supra*, 73 Cal.App.5th at p. 975.) The victim was killed when he fell and hit his head after someone in the group punched him. (*Ibid.*) Langi contended that he did not throw the fatal punch. The jury convicted him of robbery, battery, and second degree murder. (*Id.* at p. 977.)

The superior court summarily denied Langi's resentencing petition, concluding that the jury had found him guilty as the actual killer. (*Langi, supra*, 73 Cal.App.5th at p. 977.) On appeal, the court rejected the superior court's conclusion and assumed that the jury had convicted Langi as an aider and abettor. (*Id.* at p. 980.) The appellate court then held that, although the jury had not been instructed on the natural and probable consequences doctrine, the standard instructions given on second degree murder and aiding and abetting were ambiguous, as they permitted the jury to find Langi guilty on a theory under which malice was imputed to him based solely on his participation in the crime. (*Ibid.*) The court observed that while the aiding and abetting instruction stated that a person aids and abets a crime if the person acts with knowledge of the perpetrator's unlawful purpose and with the intent to commit or encourage that crime, "the second-degree-murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death." (*Id.* at p. 982.) The

11

perpetrator's unlawful purpose did not need to be killing the victim, but could have been "only to strike or to injure, or conceivably only to embarrass, the victim." (*Ibid.*) Thus, the court reasoned that "the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill." (*Ibid.*) Because the aiding and abetting instruction did not require Langi to act with conscious disregard for human life, the appellate court concluded that the jury could have convicted him as an aider and abettor simply for intending to aid the perpetrator's act, without express or implied malice. (*Id.* at p. 983.)

The ambiguity identified in *Powell* and *Langi* is not present here. For aider and abettor liability, CALCRIM No. 401 requires the defendant to know that the perpetrator intended to commit the crime. The only crime charged here was murder, either first or second degree. In *Langi* the defendant was also charged with and found guilty of robbery and battery. (*Langi*, *supra*, 73 Cal.App.5th at p. 976.) Thus, the jury instructions in *Langi* permitted Langi to be convicted for aiding and abetting murder based on a finding that he intended to aid and abet a battery or some other crime. But here, murder was the only crime charged, and required one of two different intents: either intent to kill (express malice) or conscious disregard for human life (implied malice). The jury unambiguously found that Gwin intended to kill. There is no reasonable possibility that the jury could have found Gwin guilty of murder as an aider and abettor because he knowingly helped the perpetrator commit a specific crime yet did not harbor the requisite mens rea.

Gwin also cites *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*), emphasizing that, unlike *Powell* and *Langi*,

the defendant in *Maldonado* was found guilty of first degree murder.  However, in *Maldonado*, the jury was instructed on a lying in wait theory of first degree murder, and the "lying in wait instruction did not instruct the jury that the perpetrator needed to intend to cause death."  (*Maldonado*, *supra*, 87 Cal.App.5th at p. 1266.)  The court thus concluded that, "using *Langi*'s reasoning, the jury could have construed the instructions such that, 'to be guilty as an aider and abettor of [lying in wait first degree] murder, appellant need only have intended to encourage the perpetrator's intentional act—in this case, [a surprise attack on the victim]—whether or not appellant intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Ibid.*) Gwin's jury was not instructed on an alternative basis for murder such as lying in wait.  As discussed above, both first degree murder theories expressly required the jury to find that Gwin intended to kill the victim.

The jury instructions here required the jury to find that Gwin personally harbored express or implied malice whether he was a direct perpetrator or an aider and abettor.  He accordingly is ineligible for relief under section 1172.6 as a matter of law, and any error in denying his petition without issuing an order to show cause was harmless.

13

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**SIGGINS, J.

We concur:

CURREY, P. J.

MORI, J.

** Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.